Julie Pollock (SBN 346081)
**BERGER MONTAGUE PC**
505 Montgomery St, Suite 625
San Francisco, CA 94111
Tel: (415) 906-0684
Fax: (215) 875-4604
jpollock@bm.net

John G. Albanese*
**BERGER MONTAGUE PC**
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: 612-594-5999
Fax: 612-584-4470
jalbanese@bm.net
*pro hac vice forthcoming

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FELICIA ROBINSON, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, LLC,<br><br>Defendant. | CASE NO. 3:24-cv-2163<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>(I), (II) Violations of the Fair Credit Reporting Act;<br>(III), (IV) Violations of the California Consumer Credit Reporting Agencies Act; and<br>(V) Violations of the California Unfair Competition Law<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff Felicia Lum Robinson ("Plaintiff"), by and through her attorneys, brings the following Class Action Complaint on behalf of herself and the classes set forth below and states as follows:

**INTRODUCTION**

1. Plaintiff brings this class action claim against one of the national "Big-3" consumer reporting agencies ("CRAs")—Experian Information Solutions, LLC ("Defendant")-- for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA"). This case is about the unlawful opening of credit accounts by BLST Operating Company, LLC dba Fingerhut ("Fingerhut") in the spring of 2022 and Defendant's reporting of those unlawful accounts. Plaintiff also brings parallel claims under the California Credit Reporting Agencies Act, Cal. Civ. Code § 1785.1, *et seq*. ("CCRAA"), and a claim for injunctive relief under the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq*. ("UCL").

2. Fingerhut is a mail order/online retailer that markets itself to people with poor or no credit histories, and encourages its customers to build their credit by buying products from Fingerhut with Fingerhut's credit accounts.

3. In April 2022, without permission. Fingerhut opened thousands of new accounts for consumers with current accounts at Fingerhut. The old accounts are known as "Fingerhut Advantage" accounts and the new accounts are known as "Fingerhut Fetti" accounts.

4. Fingerhut's stated reason for doing so was that it was "required" to issue a "new credit account" "because [Fingerhut's] agreement with [Fingerhut's] current financing partner is ending."

5. For these thousands of consumers, Fingerhut reported to Experian, Equifax, and TransUnion that the Fingerhut Advantage account were "closed" and reported the Fingerhut Fetti account as a new account and separate tradeline with a date opened in April 2022.

6. These actions damaged consumers' credit scores, and created the inaccurate impressions that the consumers had authorized the opening of a new Fetti account in the spring of 2022.

7. Defendant was aware that Fingerhut was reporting the opening of thousands of new

accounts while simultaneously reporting the closing of thousands of accounts. Yet Defendant did not do anything to ensure that those new accounts were opened with authorization. Instead, Defendant has followed a policy of leaving the accuracy of its credit reporting entirely to its paying customers –even when it has actual knowledge that the reporting is suspect or unreliable. The FCRA and CCRAA require Defendant to do more.

8. Despite receiving numerous disputes from consumers that the Fetti accounts were opened without permission, Defendant refused to meaningfully reinvestigate the disputes and continued reporting the new accounts.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 15 U.S.C § 1681p, 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). Jurisdiction is also appropriate under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one class member is a citizen of a different state than Defendant.

10. The Court has personal jurisdiction over Defendant because Defendant conducts business in this District, including engaging in inaccurate reporting on Plaintiff and other residents in this District.

11. Venue is proper under 28 U.S.C. § 1391(b).

12. **Divisional Assignment.** Per Civil L.R. 3.2(d), it is appropriate to assign this case to the San Francisco or Oakland Division because the action arises from events in Alameda County.

## THE PARTIES

13. Plaintiff Felicia Lum Robinson is a natural person who resides in San Leandro, California and is a "consumer" protected by the FCRA and CCRAA.

14. Defendant does business throughout the United States, including in this District and Division.

15. Experian is a CRA as defined by the FCRA and CCRAA because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating

consumer credit information or other information on consumers for the purpose of furnishing consumer reports to creditors, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## BACKGROUND

### The FCRA and CCRAA

16. "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

17. One of these measures, 15 U.S.C. § 1681e(b), requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). This provision imposes a "very high standard" on consumer reporting agencies. *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1068 (9th Cir. 2000), *reversed on other grounds*, *TRW Inc. v. Andrews*, 534 U.S. 19 (2001). The CCRAA has a parallel requirement. Cal. Civ. Code § 1785.14(b).

18. The FCRA also permits consumers to dispute the accuracy of their reports, which requires the consumer reporting agency to reinvestigate the reporting. 15 U.S.C. § 1681i(a). The reinvestigation obligation is stringent and requires the consumer reporting agency to do more than simply "parrot" back what a furnisher provides to them. *Cushman v. Trans Union Corp.*, 114 F.3d 220, 225 (3d Cir. 1997). The CCRAA contains a parallel requirement, Cal. Civ. Code § 1785.16(a).

### Credit Reporting and Scoring

19. A credit score is a score generated by applying a scoring algorithm to the information contained in a credit report. The credit scoring industry is dominated by the Fair Isaac Corporation ("FICO"). Most FICO scores are on a scale from 300–850.

3
COMPLAINT

20. Credit scores greatly impact both whether lenders will offer credit and the terms on which they will offer credit. Consumers with higher credit scores receive higher credit limits at lower interest rates.

21. FICO scores are the predominant credit scores used by lenders. FICO has released guidance about what can affect consumers' credit scores. Per FICO, FICO takes into account the following:

- 35% Payment history
- 30% Outstanding debt
- 15% Credit history length
- 10 % Pursuit of new credit
- 10% Credit mix[1]

22. Opening a new account can have a significant effect on one's credit score. As explained by FICO:

> New accounts will lower your average account age, which will have a larger effect on your FICO Scores if you don't have a lot of other credit information. Even if you have used credit for a long time, opening a new account can still lower your FICO Scores.[2]

23. FICO thus advises that consumers should "carefully consider if you need a new credit account."[3]

24. Defendant knows that reporting of a new account can harm a consumer's credit score, and indeed has taken steps to try to ensure that consumers with long-standing accounts do not suffer a drop in score when an account is transferred.

25. Defendant (through the trade group, the Consumer Data Industry Association ("CDIA")) created a uniform reporting standard, METRO 2 Format, by which consumer data is furnished electronically to the credit bureaus from their customers – "furnishers" such as

---

[1] https://www.myfico.com/credit-education/whats-in-your-credit-score (last visited Apr. 9, 2024).
[2] https://www.myfico.com/credit-education/credit-scores/new-credit (last visited Apr. 9, 2024).
[3] *Id.*

Fingerhut.

26. The CDIA publishes guidance called the Credit Resource Reporting Guide ("CRRG").

27. One piece of information that creditors provide to the credit bureaus is the date an account was originally opened, known as the "Date Opened" field. The CRRG advises data furnishers that the "original Date Opened" for a credit account should be retained "regardless of future activity, such as transfer, refinance, lost or stolen card, etc."

28. Thus, it is a typical practice in the credit industry that when an account is transferred or transitioned, the creditors will report a single account with an integrated payment history and a Date Opened of when the initial account was first opened.

### Fingerhut Opens Thousands of Accounts Without Authorization

29. In March 2022, Fingerhut sent an advisory out to its customers, telling them that because Fingerhut's financing partner had changed, Fingerhut customers could no longer use their "Fingerhut Advantage" accounts, and instead would have their accounts "transitioned" to a "Fingerhut Fetti" account. These Fingerhut Fetti accounts were created automatically for customers in good standing "as a business formality."

30. The Fingerhut Fetti accounts had the same credit limit as the Fingerhut Advantage accounts and had the same 10-digit customer numbers. Per Fingerhut, the Fingerhut Fetti account was designed to "offer you the same benefits as you had with your Fingerhut Advantage credit account."[4]

31. Fingerhut did not provide consumers with any apparent option to not open a Fetti account.

32. After Fingerhut opened the Fetti accounts, it began reporting two separate tradelines: a tradeline for the Fingerhut Advantage account and a tradeline for the Fingerhut Fetti account. The Fingerhut Fetti account was reported with a Date Opened in April 2022.

---

[4] https://www.fingerhut.com/content/faqs-fetti (last visited Apr. 9, 2024).

33. Fingerhut reported the opening of the Fetti account and the closing of the Fingerhut Advantage account at or around the same time for thousands of consumers.

34. Without any meaningful review, Defendant then began including both tradelines on credit files and reports, and disseminated the inaccurate information to consumers' potential creditors.

35. This reporting was inaccurate. Consumers had not authorized Fingerhut to authorize the opening of a new credit account. Thus it was inaccurate to report the Fingerhut Fetti account when the consumer had never authorized the opening of the account.

36. The Fingerhut Fetti accounts thus never should be reported. At the very least, the Fingerhut Fetti accounts should have indicated that the accounts were a continuation of the prior Fingerhut Advantage accounts and reported a "Date Opened" with the same date as the Fingerhut Advantage accounts.

37. Defendant has received multiple direct disputes about the reporting of the Fingerhut accounts but has failed to change the reporting. For example, in July 2022, a consumer and putative class member named Brian Gross submitted the following dispute to Defendant:

> I am writing to dispute my credit report. I have had an account with Fingerhut since October 17, 2011. In March 2022, Fingerhut apparently transitioned my account to a WebBank/Fingerhut Fetti Credit Account. I did not request or control any aspect of this transition and can no longer use my prior account. There are now two Fingerhut accounts showing on my credit report.
>
> The Fingerhut Fetti account inaccurately states that the date opened for the account is March 22, 2022. This is incorrect. I did not open a new account with Fingerhut in March 2022. The date opened should be October 17, 2011. I am concerned that having a recently opened account will affect my credit score. I am disputing the date opened for the Fingerhut Fetti account.
>
> From what I understand, it appears that Fingerhut transitioned many accounts to a Fingerhut Fetti account in March 2022. I don't think that the inaccuracy in my report is an isolated incident. I am therefore requesting that all reporting of Fingerhut Fetti accounts be reinvestigated and corrected.

38. Defendant has received similar disputes, including from Plaintiff.

39. Defendant did not engage in any reasonable reinvestigation of these disputes. Instead, Defendant simply forwarded the disputes to Fingerhut which did not meaningfully change the reporting of the Fingerhut Fetti accounts. Indeed, in August 2022, Defendant informed Mr. Gross that his credit file would not be changed. The Fingerhut Fetti accounts were neither removed and the Date Opened on the accounts was not changed to the date that the Fingerhut Advantage accounts were opened.

40. Thus, at a minimum, as of September 1, 2022, Defendant was on unequivocal notice that Fingerhut had reported thousands of accounts inaccurately and Defendant still did not adequately reinvestigate or correct any credit reporting.

### Plaintiff Felicia Lum Robinson

41. Plaintiff first opened her Fingerhut Advantage account in or around March 2019. Plaintiff kept her Fingerhut Advantage account in good standing and made her payments on time.

42. In or around April 2022, Fingerhut opened a new Fetti account for Plaintiff without her permission. Fingerhut reported the new account to the Defendant as a separate trade line with an account opening date in April 2022.

43. The Fingerhut Fetti account has the same credit limit as the Fingerhut Advantage account.

44. Plaintiff never used the Fingerhut Fetti account.

45. Since April 2022, Defendant has disseminated Plaintiff's consumer report to numerous third parties on multiple occasions. Those reports contain or incorporate the inaccurate account information regarding the Fingerhut Fetti account.

46. Defendant issued inaccurate reports on Plaintiff to, among others, Patelco Credit Union in May 2022, Capital One NA in May 2022, and Discover Financial Services in September 2022 and September 2023.

47. Plaintiff has disputed to Defendant that the reporting is inaccurate through a written dispute in February 2022. Plaintiff's dispute letter specifically informed Defendant that "I understand that this is not limited to me but that Fingerhut opened thousands of Fingerhut Fetti

accounts without permission in April 2022. You should reinvestigate and correct all of these accounts and I am disputing on behalf of these people as well."

48. Defendant received Plaintiff's disputes but did not change its reporting.

49. Defendant's inaccurate reporting has falsely portrayed Plaintiff as opening an account that never opened, inaccurately portrayed her credit history, and caused her anxiety, worry, and frustration about the information being disseminated to her potential creditors.

**Defendant Did Not Have a Basis to Presume Fingerhut's Reporting Was Accurate**

50. Defendant reported that Fingerhut opened thousands of accounts at or around the same date without performing any inquiry as to whether consumers had authorized the opening of these accounts and without performing any inquiry about whether Fingerhut's credit reporting was appropriate, including the date that the accounts were unlawfully opened.

51. Even prior to the reporting of thousands of new accounts, Defendant had never established that Fingerhut was a reliable source in the reporting of credit information. In accordance with its reporting procedures, Defendant followed a policy of not vetting, examining, reviewing or reasonably investigating the reporting provided to it by Fingerhut.

52. Defendant is aware or should have been aware that it is unusual for a furnisher such as Fingerhut to report the opening of thousands of new accounts on the same date.

53. In an event where a creditor opens thousands of accounts at the same time while closing thousands of other accounts, it was unreasonable for Defendant to assume that Fingerhut's reporting was accurate and to report such information without any further review or inquiry.

54. It was further unreasonable and illegal for Defendant to continue reporting such information despite the fact that Defendant had received disputes challenging Fingerhut's reporting.

55. Instead of conducting a meaningful reinvestigation of the reporting as required by the FCRA, Defendant merely passed along the disputes to Fingerhut and accepted Fingerhut's automated "verification" of the disputes at face value.

56. Fingerhut has been sued at least 50 times related to inaccurate credit reporting and

Defendant has been a co-defendant in many of these actions.

57. In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, among other things, the following:

- Defendant is a corporation with access to legal advice through its own general counsel's office and outside litigation counsel. Yet, there is no contemporaneous evidence that it determined that its conduct was lawful.

- Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, caselaw, and the plain language of the FCRA and CCRAA. It does not comport with Defendant's obligations under the FCRA or CCRAA to report thousands of new accounts opened on the same day without doing any investigation or reinvestigation as to why those accounts are being opened.

- Defendant voluntarily ran a risk of violating the law which was substantially greater than the risk associated with a reading that was merely careless.

- Defendant knew that reporting new tradelines would harm consumers' credit. However, it persisted in doing so.

- Defendant's violations of the FCRA and CCRAA were repeated and systematic.

58. At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA and CCRAA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that these consumers have disputed; and Defendant will continue to engage in this conduct because it is more expensive to comply with the law rather than not comply.

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings her claims on behalf of the following Classes pursuant to Fed. R. Civ. P. 23:

**Reasonable Procedures Class**
All individuals in the United States for whom (1) Fingerhut automatically transitioned Fingerhut Advantage accounts to Fingerhut Fetti accounts and (2) Defendant disseminated

a consumer report to a third party at a time where Fingerhut was reporting both a Fingerhut Advantage and Fingerhut Fetti account.

**Failure to Reinvestigate Class**
All individuals in the United States for whom (1) Fingerhut automatically transitioned Fingerhut Advantage accounts to Fingerhut Fetti accounts and (2) Defendant disseminated a consumer report to a third party at a time where Fingerhut was reporting both a Fingerhut Advantage and Fingerhut Fetti account on or after September 1, 2022.

**California Reasonable Procedures Class**
All individuals in California for whom (1) Fingerhut automatically transitioned Fingerhut Advantage accounts to Fingerhut Fetti accounts and (2) Defendant disseminated a consumer report to a third party at a time where Fingerhut was reporting both a Fingerhut Advantage and Fingerhut Fetti.

**California Failure to Reinvestigate Class**
All individuals in California for whom (1) Fingerhut automatically transitioned Fingerhut Advantage accounts to Fingerhut Fetti accounts and (2) Defendant disseminated a consumer report to a third party at a time where Fingerhut was reporting both a Fingerhut Advantage and Fingerhut Fetti account on or after September 1, 2022.

## Class Certification is Appropriate

60. The Classes satisfy the requirements of Fed. R. Civ. P. 23 as there is a well-defined community of interest in the litigation and the proposed Classes are ascertainable from Defendant's records and records of third parties, including Fingerhut.

61. The Class members are so numerous that joinder of all is impractical. The names and addresses are identifiable through documents maintained by Defendant and third parties, and they may be notified of the pendency of this action by published and/or mailed notice.

62. Plaintiff's claims are typical of the claims of each Class member. The violations suffered by Plaintiff are typical of those suffered by other putative class members, and Defendant treated the Plaintiff consistently with other putative Class members in accordance with its standard policies and practices.

63. Plaintiff is an adequate representative of the Classes because her interests coincide with, and are not antagonistic to, the interests of the members of the Classes she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to

prosecute this action vigorously.  Plaintiff and her Counsel will fairly and adequately protect the interests of members of the Classes.

64. Common questions of law and fact exist as to all members of the Classes.  Without limitation, the total focus of the litigation will be Defendant's uniform conduct and procedures, whether Defendant's uniform procedures were reasonable and whether Defendant acted willfully in its failure to implement procedures to ensure that its reporting was accurate or its failure to reinvestigate disputes.  The appropriate amount of statutory and/or punitive damages under the FCRA are common questions as well the scope of any injunctive relief.

65. Class certification is also appropriate for equitable or injunctive relief because Defendant has acted or refused to act on grounds that apply generally to the California Classes such that final injunctive relief is appropriate respecting the California Classes as a whole.

66. Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the CCRAA, FCRA, and UCL.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

67. The administration of this action can be handled by Class Counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy (On Behalf of Plaintiff and the Reasonable Procedures Class)**

68.     Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

69.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and each member of the Reasonable Procedures Class.

70.     The foregoing violations were negligent and/or willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Reasonable Procedures Class members under 15 U.S.C. § 1681e(b).

71.     As a result of Defendant's conduct, Plaintiff and Reasonable Procedures Class members suffered actual damages including but not limited to impairment to credit, damage to reputation, emotional distress, and wasted time.

72.     Plaintiff and members of the Reasonable Procedures Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o and 15 U.S.C. § 1681n.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Conduct a Reasonable Reinvestigation**
**(On Behalf of Plaintiff and the Failure to Reinvestigate Class)**

73.     Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

74.     Defendant violated 15 U.S.C. § 1681i(a) by failing to conduct a reinvestigation to determine if the information it reported was accurate, and by failing to correct inaccurate information for Plaintiff and the members of the Failure to Reinvestigate Class.  Defendant was put on notice of the widespread issue with its reporting through consumer disputes yet failed to conduct any meaningful reinvestigation.

75. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other Failure to Reinvestigate Class members under 15 U.S.C. § 1681i(a)(1)(A).

76. As a result of Defendant's conduct, Plaintiff and Failure to Reinvestigate Class members suffered actual damages including but not limited to impairment to credit, damage to reputation, emotional distress, and wasted time.

77. Plaintiff and members of the Failure to Reinvestigate Class are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o and 15 U.S.C. § 1681n.

### COUNT III
### Cal. Civ. Code § 1785.14(b)
**(On behalf of Plaintiff individually and on behalf of the California Reasonable Procedures Class)**

78. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

79. Defendant violated Cal. Civ. Code § 1785.14(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and members of the California Reasonable Procedures Class.

80. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other California Reasonable Procedures Class members under Cal. Civ. Code § 1785.14(b).

81. As a result of Defendant's conduct, Plaintiff and California Reasonable Procedures Class members suffered actual damages including but not limited to impairment to credit, damage to reputation, emotional distress, and wasted time.

82. The violations are reoccurring and certain to happen again absent appropriate injunctive relief. Plaintiff and California Reasonable Procedures Class Members will continue to

apply for credit, and Defendant will continue to issue inaccurate reports.

83. Plaintiff and members of the California Reasonable Procedures Class are entitled to recover actual damages, punitive damages, injunctive relief, costs and attorneys' fees from the Defendant pursuant to Cal. Civ. Code § 1785.31.

**COUNT IV**
**Cal. Civ. Code § 1785.16(a)**
**Failure to Conduct a Reasonable Reinvestigation**
**(On Behalf of Plaintiff and the California Failure to Reinvestigate Class)**

84. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

85. Defendant violated Cal. Civ. Code § 1785.16(a) by failing to conduct a reinvestigation to determine if the information it reported was accurate, and by failing to correct inaccurate information for Plaintiff and the members of the California Failure to Reinvestigate Class. Defendant was put on notice of the widespread issue with its reporting through consumer disputes yet failed to conduct any meaningful reinvestigation.

86. The foregoing violations were negligent and/or willful. Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff and other California Failure to Reinvestigate Class Members under Cal. Civ. Code § 1785.16(a)

87. As a result of Defendant's conduct, Plaintiff and California Failure to Reinvestigate Class members suffered actual damages including but not limited to impairment to credit, damage to reputation, emotional distress, and wasted time.

88. The violations are reoccurring and certain to happen again absent appropriate injunctive relief. Plaintiff and California Failure to Reinvestigate Class Members will continue to apply for credit, and Defendant will continue to issue inaccurate reports.

89. Plaintiff and members of the California Failure to Reinvestigate Class are entitled to recover actual damages, punitive damages, injunctive relief, costs and attorneys' fees from the Defendant pursuant to Cal. Civ. Code § 1785.31.

# COUNT V
### Cal. Bus. & Prof. Code § 17200, *et seq*.
### (On behalf of Plaintiff and the California Reasonable Procedures Class)
### Injunctive Relief Only

90. Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

91. Defendant's inaccurate reporting and failure to reinvestigate constituted unlawful, unfair, and fraudulent business practices.

92. Defendant's practices were unlawful because they violate the FCRA and the CCRAA.

93. The FCRA and CCRAA required Defendant to follow reasonable procedures to assure maximum possible accuracy of the information it reported and to reinvestigate any disputes. 15 U.S.C. §§ 1681e(b); 1681i(a); Cal. Civ. Code §§ 1785.14(a);1785.16(b). As described above, Defendant violated these provisions.

94. Defendant's practices were also unfair, because it is unethical, immoral, unscrupulous, oppressive, and substantially injurious to consumers to inaccurately report consumers' credit and to fail to reinvestigate disputes.

95. Defendant's practices were fraudulent because the report recipients were deceived and/or were likely to be deceived by Defendant's inaccurate representations regarding Plaintiff and California Reasonable Procedures Class Members' credit.

96. The harm caused by these business practices vastly outweighs any legitimate utility they possible could have.

97. Because Plaintiff will seek credit in the future, there is a real and immediate threat that Plaintiff will suffer the same injury with respect to future credit applications.

98. Plaintiff lacks an adequate remedy at law to prevent the inaccurate reporting from recurring.

99. Plaintiff and the members of the California Reasonable Procedures Class are entitled to injunctive relief and to the recovery of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Classes, seeks the following relief:

a. Determining that this action may proceed as a class action under Fed. R. Civ. P. 23;

b. Designating Plaintiff as the class representative for the Classes;

c. Designating Plaintiff's Counsel as counsel for the Classes;

d. Issuing proper notice to the Classes at Defendant's expense;

e. Declaring that Defendant committed multiple, separate violations of the FCRA, CCRAA and UCL;

f. Declaring that Defendant acted negligently, willfully, and in deliberate or reckless disregard of the rights of Plaintiff and the Classes under the FCRA, CCRAA, and UCL;

g. Awarding actual and/or statutory damages as provided by the FCRA and CCRAA;

h. Awarding punitive damages;

i. Granting appropriate injunctive relief under the UCL;

j. Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA, CCRAA, the UCL, and/or under the substantial benefit and/or common fund doctrine or other similar principle or doctrine, or in accordance with Cal. Code of Civ. Proc. § 1021.5;

k. Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

**JURY DEMAND**

Plaintiff, on behalf of herself and the Classes, demands a trial by jury on all issues triable. by a jury.

Dated: April 11, 2024                    BERGER MONTAGUE PC

                                         /s/Julie Pollock

                                         Julie Pollock, SBN 346081

                                         *ATTORNEYS FOR PLAINTIFF*